Robbie Malone
State Bar No. 12876450
Robbie Malone, PLLC
NorthPark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas   75231
214.346.2625 (Direct Dial)
214.346.2631 (Fax)
rmalone@rmalonelaw.com

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | § | |
|     PLAINTIFF, | § | |
| | § | CASE NO. 3-09CV1497-G |
| v. | § | |
| | § | |
| CREDIT MANAGEMENT, LP, JAMES | § | |
| HAWKINS, STEVE BROCKETT, | § | |
| NELSON WILSON, THOMAS | § | |
| STOCKTON, REBECCA SWOPE, | § | |
| NEVANDONE VANHNARATH, | § | |
| CLARISSA MURPHY, EILEEN | § | |
| RODRIGUEZ, ALFREDO CRUZ, | § | |
| KENDRYA KAPP, ANNA GARCIA, | § | |
| NANCY MENA, REBECCA GREENLEE, | § | |
| ANTHONY PECK, ADRIENNE SCOTT, | § | |
| JUAN LOPEZ, JIMMY SALDONA, | § | |
| TONY RICHARD, BOBBIN JOSEPH, | § | |
| ELSIE BARNES, MELISSA MENA, | § | |
| BRANDI JONES, TARRYANCE | § | |
| BLANCHARD, SUSANA CAMACHO, | § | |
| CUREESE PAYTON, MICHAEL | § | |
| LEATHERWOOD, LINDA MALONE, | § | |
| TRAVELERS CASUALTY AND | § | |
| SURETY COMPANY OF AMERICA | § | |
|     DEFENDANTS. | § | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR
### SUMMARY JUDGMENT

# TABLE OF CONTENTS

I. SUMMARY...............................................................................................2

II. BACKGROUND........................................................................................2

III. SUMMARY JUDGMENT STANDARD.........................................................3

IV. ARGUMENT AND AUTHORITIES...............................................................4

  A. There is No Evidence that the CMI Defendants Violated the TCPA......................4

    1. Plaintiff has Failed to Provide Evidence that Each Defendant "Made a Call" to Plaintiff or that Each Defendant Violated the TCPA.....................5

    2. Plaintiff has Not Shown that He was "Charged" for Each Call that He Claims Violated the TCPA................................................................6

    3. 47 U.S.C. § 227(d) Does Not Provide a Private Right of Action.............10

  B. There is No Evidence that Each Individual Defendant Violated the FDCPA.......12

    1. Plaintiff has Failed to Prove that he owed a Debt Covered by the FDCPA............................................................................12

    2. There is No Evidence that Each Defendant violated 15 U.S.C. § 1692c...................................................................................13

    3. There is No Evidence that Defendants Harassed or Abused Plaintiff.......14

    4. There is No Evidence of False or Misleading Representations.................15

    5. There is No Evidence as to Who, if anyone, Violated 15 U.S.C. § 1692g...................................................................................15

  C. There is No Evidence that Each Defendant Violated the Texas Finance Code.....16

  D. Plaintiff's FCRA Claim Should be Dismissed...................................................16

  E. There is No Evidence that Each Defendant Violated the Texas Deceptive Trade Practices Act....................................................................19

  F. Plaintiff has Offered No Evidence that He has Suffered Any Damages as a Result of Each Defendants' Actions..............................................19

V. CONCLUSION......................................................................................20

# TABLE OF AUTHORITIES

## Statutes

47 U.S.C. § 503(b)(1), (5)................................................................................................... 11

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 ...............................................3, 17, 18, 19

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692....................2, 12, 13, 14, 15

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 .....................2, 5, 6, 9, 10, 11

Texas Deceptive Trade Practices Act ("DTPA"), Texas Business & Commerce Code § 17 ................................ 3, 20

Texas Finance Code, § 392, Texas Debt Collection Act ("TDCA") ...............................2, 16, 20

## Rules

Fed. R. Civ. P. 56(c) .......................................................................................................... 3

## Regulations

47 C.F.R. 64.1200(d) ........................................................................................................ 10

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*7 F.C.C.R.
8652 (1992)...................................................................................................................... 10

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order Docket No.
02-278, para. 23 (July 3, 2003) ...................................................................................... 6, 7

## U.S. Supreme Court Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598 (1970) ........................................ 3

*Alexander v. Sandoval*, 532 U.S. 275 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) ...................... 11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986)......................................... 3, 4

*Matsusheta Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 (1986)............................ 3

## Federal Circuit Cases

*First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133 (5th Cir. 1995)......................................... 12

*Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003) ...................... 8, 9

*Peart v. Shippie*, 08-17270 (11th Cir. August 11, 2009) ..................................................17, 18

## Federal District Court Cases

*Adler v. Vision Lab Telecomms., Inc.*, 393 F.Supp.2d 35 (D.D.C. 2005) .................................................. 11

*Boydston v. Asset Acceptance LLC*, 496 F.Supp.2d 1101 (N.D. Cal. 2007) ........................................10, 11

*Klein v. Vision Lab Telecomms., Inc.*, 399 F.Supp.2d 528 (S.D.N.Y. 2005) ........................................11, 12

*Kopff v. Battaglia*, 425 F.Supp.2d 76 (D.D.C. 2006) ................................................................................ 11

## State Court Cases

*Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644 (Tex. 1996) ...................................................................... 20

*Elston v. Resolution Servs.*, 950 S.W.2d 180 (Tex.App.–Austin 1997, no writ) ...................................... 20

*Stefano & Assoc., Inc. v. Global Lending Group, Inc.*, 2008-Ohio-177 (9th Dist. Ct. of Appeals of Ohio 2008) ........ 8

Robbie Malone
State Bar No. 12876450
Robbie Malone, PLLC
NorthPark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas   75231
214.346.2625 (Direct Dial)
214.346.2631 (Fax)
rmalone@rmalonelaw.com

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | § | |
|     PLAINTIFF, | § | |
| | § | CASE NO. 3-09CV1497-G |
| v. | § | |
| | § | |
| CREDIT MANAGEMENT, LP, JAMES | § | |
| HAWKINS, STEVE BROCKETT, | § | |
| NELSON WILSON, THOMAS | § | |
| STOCKTON, REBECCA SWOPE, | § | |
| NEVANDONE VANHNARATH, | § | |
| CLARISSA MURPHY, EILEEN | § | |
| RODRIGUEZ, ALFREDO CRUZ, | § | |
| KENDRYA KAPP, ANNA GARCIA, | § | |
| NANCY MENA, REBECCA GREENLEE, | § | |
| ANTHONY PECK, ADRIENNE SCOTT, | § | |
| JUAN LOPEZ, JIMMY SALDONA, | § | |
| TONY RICHARD, BOBBIN JOSEPH, | § | |
| ELSIE BARNES, MELISSA MENA, | § | |
| BRANDI JONES, TARRYANCE | § | |
| BLANCHARD, SUSANA CAMACHO, | § | |
| CUREESE PAYTON, MICHAEL | § | |
| LEATHERWOOD, LINDA MALONE, | § | |
| TRAVELERS CASUALTY AND | § | |
| SURETY COMPANY OF AMERICA | § | |
|     DEFENDANTS. | § | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR
## SUMMARY JUDGMENT

**Brief in Support of Defendants' Motion for Summary Judgment- Page 1**
9840199.Revised MSJ for Individuals

TO THE HONORABLE UNITED STATES DISTRICT COURT :

COMES NOW Defendants James Hawkins, Nelson Wilson, and Steve Brockett, Thomas Stockton, Rebecca Swope, Nevandone Vanhnarath, Clarissa Murphy, Eileen Rodriguez, Alfredo Cruz, Kendrya Kapp, Anna Garcia, Nancy Mena, Rebecca Greenlee, Anthony Peck, Adrienne Scott, Juan Lopez, Jimmy Saldona, Tony Richard, Bobbin Joseph, Elsie Barnes, Melissa Mena, Brandi Jones, Tarryance Blanchard, Susana Camacho, Cureese Payton, Michael Leatherwood (The CMI Defendants herein) through counsel of record, and file this Brief in Support of Defendants' Motion for Summary Judgment.

## I.

## SUMMARY

1.  Plaintiff has filed suit against a number of individuals, employees and former employees of Credit Management LP (hereinafter "CMI"), alleging violations of various debt collection laws. Plaintiff has joined these parties without any knowledge or evidence of any wrongful acts that they may have done. Therefore, because of this complete lack of evidence, these individuals now move for summary judgment.

## II.

## BACKGROUND

2.  Plaintiff filed a Complaint in this Court, the United States District Court for the Northern District of Texas, on August 12, 2009, alleging that CMI and three other defendants violated the following:

    a.      the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227;

    b.      the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692;

    c.      the Texas Finance Code, § 392, Texas Debt Collection Act ("TDCA");

     d.     the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681; and

     e.     the Texas Deceptive Trade Practices Act ("DTPA"), Texas Business &

          Commerce Code § 17. *See* <u>Exhibit A</u>.

3.     On October 29, 2009, Plaintiff filed a Second Amended Complaint in which he added

     twenty-four (24) individual defendants - employees and former employees of CMI.

4.     As will be explained below, Plaintiff has admitted that he has no idea what these

     particular individuals may or may not have done and Plaintiff has no evidence supporting

     his claims against them.

## III.

## <u>SUMMARY JUDGMENT STANDARD</u>

5.     The purpose of summary judgment is to pierce the pleadings and to assess the proof to

     determine whether there is a genuine need for trial. *Matsusheta Elec. Ind. Co. v. Zenith*

     *Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).  Additionally, a motion for

     summary judgment serves to isolate and dispose of factually unsupported claims or

     defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986).

     A finding for summary judgment is proper "if the pleadings, depositions, answers to

     interrogatories, and admissions on file, together with the affidavits, if any, show that

     there is no genuine issue as to any material fact and that the moving party is entitled to

     judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Celotex*, 477 U.S. at 372.

6.     The party seeking summary judgment carries the burden of demonstrating that there is an

     absence of evidence to support the nonmoving party's case. *Adickes v. S.H. Kress & Co.*,

     398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970); *Celotex*, 477 U.S. at 325. When it is the

     defendant that moves for summary judgment, it can satisfy its burden by either (a)

submitting summary judgment evidence negating the existence of a material element of

the plaintiff's claim, or (b) showing there is no evidence to support an essential element

of the plaintiff's claim. *Celotex*, 477 U.S. at 322-25. Once this burden has been met, the

nonmovant must introduce evidence establishing that there is a genuine issue of material

fact. *Matsushita*, 475 U.S. at 585-86.

**IV.**

**<u>ARGUMENT AND AUTHORITIES</u>**

7.     Plaintiff lists the names of each individual Defendant in his Second Amended Complaint,

followed by the phrase "is a[n] [former] employee of Defendant CMI that attempted to

collect a debt from the Plaintiff." *See* <u>Defendants' Appendix</u> at 1-8, ¶¶ 3-30. Plaintiff

broadly alleges that the "acts, errors, and omissions of each and every Defendant

constitutes numerous and multiple violations" of each of the above listed statutes. <u>Def's</u>

<u>App.</u> at 20-21, ¶¶ 81, 84 & 87. Plaintiff further alleges that, "[a]s a result of each and

every one of the Defendants' willful or knowing violations of [fill in various statute

here], Plaintiff Cunningham is entitled to...damages." <u>Def's App.</u> at 20-22, ¶¶ 82, 85 &

88. Despite these general assertions, Plaintiff has not produced any evidence that any of

the particular individual defendants engaged in any of these willful or knowing violations

of any of the listed laws. Without such evidence, Plaintiff's claims against these

individuals should be dismissed.

**A.     There is No Evidence that the CMI Defendants Violated the TCPA.**

8.     Plaintiff alleges that the CMI Defendants violated the TCPA by placing calls to his

cellular telephone using an automated dialing system and a pre-recorded message. *See*

<u>Def's App.</u> at 9, ¶ 37. But, in order to prove a violation of the TCPA, Plaintiff must offer

evidence of more than just these few elements. Plaintiff must prove that each individual made a call, within the United States, not for emergency purposes, without the prior express consent of the person called, using an automatic telephone dialing system, or an artificial voice, or a prerecorded message, to a number assigned to a cellular telephone service. *See* 47 U.S.C. § 227(b). Furthermore, as explained below, Plaintiff must prove that he was, in fact, charged for each call that he allegedly received from each Defendant in order for the call to be violative of the TCPA.

1.   <u>Plaintiff has Failed to Provide Evidence that Each Defendant "Made a Call" to Plaintiff or that Each Defendant Violated the TCPA.</u>

9.   Plaintiff has produced no evidence showing if and when each particular Defendant made any calls to Plaintiff. In fact, Plaintiff has provided evidence to the contrary. During the deposition of Plaintiff, he admits, "I don't know anything about any individual's specific roles at this point...," (App. at 25 (Depo 181:25-182:1)). Plaintiff further explains, "I don't know what any of the people did..." (App. at 26 (Depo 189:16-17)), "I have not had a definitive account of what each and every person did," (App. at 26 (Depo 191:2-9)), and when asked if he could specifically explain what each person did wrong, Plaintiff answered, "Right now the only thing I can tell you is that I believe they violated the FDCPA and that they called me." App. at 27 (Depo 197:24 - 198:6). Unfortunately for Plaintiff, his speculation and belief is not enough to save his claims. Without any evidence connecting particular Defendants with specific calls or specific violations with each Defendant, Plaintiff cannot satisfy his burden under his TCPA claim against each individual. Based on his failure to do so, Plaintiff's TCPA claim against each individual should be dismissed.

2.     Plaintiff has Not Shown that He was "Charged" for Each Call that He Claims Violated the TCPA.

10.     In addition to the above failure, Plaintiff has failed to provide evidence showing that he was charged for each call which he claims violate the TCPA. The TCPA, under 47 U.S.C. § 227(b), states that "[i]t shall be prohibited for any person...to make any call...using any automatic telephone dialing system or an artificial or prerecorded voice - to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or *any service for which the called party is charged for the call*." 47 U.S.C. § 227(b)(1)(A)(iii) [emphasis added]. The Federal Communications Commission ("FCC"), the agency left in charge of interpreting the TCPA, has, over the years, examined and expounded upon this provision of the law in reports and orders. In 1992, just after the law's passage, the FCC said that "[b]ased on the plain language of § 227(b)(1)(iii), we conclude that the TCPA did not intend to prohibit autodialer or prerecorded message calls to cellular customers for which the called party is not charged." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order Docket No. 92-90, para. 45 (October 16, 1992).

11.     Just over a decade later, the FCC issued another report regarding wireless calls which made many references to whether the cellular service subscriber was charged for the calls. While considering the National Do-Not-Call registry established by the Federal Trade Commission ("FTC"), the FCC explained that the "FTC clarified that because wireless subscribers are often charged for the calls they receive, they will be allowed to register their wireless telephone numbers on the...database." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order Docket No. 02-278, para. 23 (July 3, 2003). After some discussion, the FCC agreed with the

FTC's conclusion and stated that "Congress has indicated its intent to provide significant protections under the TCPA to wireless users" and that "[a]llowing wireless subscribers to register on a national do-not-call list furthers the objectives of the TCPA, including protection for wireless subscribers from unwanted telephone solicitations *for which they are charged*." *Id.* at para. 33 [emphasis added].

12.    Later, the FCC said that "[t]he TCPA does not ban the use of technologies to dial telephone numbers. It merely prohibits such technologies from dialing emergency numbers, health care facilities, telephone numbers assigned to wireless services, and any other numbers for which the consumer is charged for the call." *Id.* at para. 133. These practices were determined to "threaten public safety and inappropriately shift marketing costs from sellers to consumers." *Id.* This conclusion was correct for its time, recognizing "that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Wireless subscribers who purchase a large 'bucket' of minutes at a fixed rate nevertheless are charged for those minutes, and for any minutes that exceed the 'bucket' allowance." *Id.* at para. 165. But while the FCC recognized this conclusion, they also stated that "calls made by cellular carriers to their subscribers, for which subscribers are not charged in any way for the call (either on a per minute, per call, or as a reduction in their 'bucket' of minutes) are not prohibited under the TCPA." *Id.* at fn. 610.   The FCC stated that this conclusion is "[c]onsistent with our determination in 1992," that the TCPA did not intend to prohibit autodialer or prerecorded message calls to cellular customers for which the called party is not charged. *Id.*

13.    Based on these reports, the FCC's analysis of congressional intent, and a plain reading of the TCPA statute, it is apparent that Congress prohibited unsolicited telephone calls to

wireless telephones because of the cost it imposed upon the recipient. Section 227(b)(1)(A)(iii) specifically lists a number of services that impose fees on the user and then makes a blanket prohibition on calls to "any service for which the called party is charged for the call." Congress was evidently concerned with the shifting of costs from advertisers to consumers, and thus imposed the TCPA as a remedy. This purpose is evidenced by subsequent TCPA litigation.

14.    The Eighth Circuit, evaluating the constitutionality of the TCPA, "determined that the restriction on facsimile transmissions directly advanced the governmental interest in protecting the public from bearing the costs of undesired advertising." *Stefano & Assoc., Inc. v. Global Lending Group, Inc.*, 2008-Ohio-177 (9th Dist. Ct. of Appeals of Ohio 2008) (citing *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003)). In *Missouri ex rel. Nixon v. American Blast Fax, Inc.*, Blast Fax complained that the differential treatment between unsolicited fax advertisements and live telemarketing calls created a gap in coverage that did not materially advance the government's interest and thus rendered the TCPA unconstitutional. *See* 323 F.3d at 656.

15.    The Court recognized that unsolicited live telemarketing calls are not restricted by the TCPA, but unsolicited fax advertisements are prohibited. *See id.* at 656-57. The Court reasoned that the differential treatment between the two actions was "consistent with the TCPA's goal to protect members of the public from bearing the costs of unwarranted advertising." *Id.* at 657. In what could have been a better attempt at an explanation, the Court states that the reason why the difference is acceptable is because the "TCPA treats live telemarketing solicitations differently if they impose costs on the recipient." *Id.* Live solicitation calls "are prohibited when they result in out-of-pocket costs for the recipient."

*Id.* In making this explanation, the Court cites to subsection (iii) of Section 227(b)(1)(A), which prohibits calls to a number assigned to a "cellular telephone service...or any service for which the called party is charged for the call." *Id.*

16.    Although the text of the opinion leaves a gap, the Court's logic does not. The Court began with the correct premise that Congress's goal for the TCPA is to protect members of the public from bearing the costs of unwarranted advertising. Therefore, the TCPA restricts advertising or telemarketing methods that shift the costs to consumers. The natural and correct inverse of that premise is that advertising that does not cost the consumer is not restricted. Based on this reasoning, Congress recognized that all unsolicited facsimile advertising costs the recipient in ink and paper. But Congress also recognized that not all telephonic advertising imposes costs on the recipient. Thus, Congress only prohibited telephone calls to "any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

17.    In the almost two decades since the TCPA was passed, the way consumers purchase and use cellular phones has drastically changed. Wireless service plans have evolved from a per minute basis to prepaid service to flat-rate fees for unlimited minutes. Under one of these unlimited plans, consumers simply pay one price regardless of how many calls they make or receive. Furthermore, many service providers offer various times of the day, before and after which, telephone calls are free of charge. Essentially, whether a cellular phone user is "charged" for a call widely varies from consumer to consumer.

18.    In the present case, Plaintiff alleges that each individual called Plaintiff using an automatic telephone dialing system or an artificial or prerecorded voice to a telephone number assigned to a cellular telephone service and that such calls violate the TCPA. But,

according to Congress and the FCC, as explained above, Plaintiff has failed to meet his burden. In order for the alleged calls to violate the TCPA, Plaintiff must prove that he was charged for the calls made to his phone. This he has failed to do. Based on the absence of evidence, Plaintiff's claim under the TCPA should be dismissed at summary judgment.

3.    <u>47 U.S.C. § 227(d) Does Not Provide a Private Right of Action.</u>

19.   Plaintiff alleges that Defendants' pre-recorded messages "failed to state the address of such business entity and misstated the true identity of the individual initiating the call, thus Defendant[s] violated the 47 USC 227(d)(1)(A) and 47 USC 227(d)(3)(A)(ii)..." <u>Def's App.</u> at 15, ¶ 54. "The TCPA...prescribes technical and procedural standards for all 'systems that are used to transmit any artificial or prerecorded voice message via telephone.'" *Boydston v. Asset Acceptance LLC*, 496 F.Supp.2d 1101, 1105 (N.D. Cal. 2007) (quoting 47 U.S.C. § 227(d)(3)). "Section 227(d)(3) instructs the Commission to impose standards that require all artificial or prerecorded telephone messages to identify the individual, business or other entity initiating the call and state the telephone number or address of such individual, business or other entity." *Boydston*, 496 F.Supp.2d at 1105 (citing   47 U.S.C. § 227(d)(3)(A)). "Even lawful artificial and prerecorded telephone messages must comply with the technical and procedural standards imposed by section 227(d)(3) and its regulations." 496 F.Supp.2d at 1105; *see* 47 C.F.R. 64.1200(d); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*7 F.C.C.R. 8652, 8779 (1992).

20.   But, "[i]n contrast to section 227(b)(3), the remedy for violations of the procedural and technical standards confers no private right of action." 496 F.Supp.2d at 1106.; *see* 47

U.S.C. § 227(f)(1); *Kopff v. Battaglia*, 425 F.Supp.2d 76, 90-91 (D.D.C. 2006); *Klein v. Vision Lab Telecomms., Inc.*, 399 F.Supp.2d 528, 539 (S.D.N.Y. 2005); *Adler v. Vision Lab Telecomms., Inc.*, 393 F.Supp.2d 35, 38-39 (D.D.C. 2005). "Instead, the TCPA allows States to bring suit to remedy 'a pattern or practice' of violations of the TCPA." 496 F.Supp.2d at 1106; *see* 47 U.S.C. § 227(f)(1). Section 227(f)(1) provides that "[w]henever the attorney general of a State . . . has reason to believe that any person has engaged . . . in a pattern or practice of telephone calls . . . in violation of this section or the regulations prescribed under this section, the State may bring a civil action on behalf of its residents. . . ." 496 F.Supp.2d at 1106.

21.    "True, the technical and procedural standards are designed to make it easier to identify the offending sender. However, under the TCPA, it is the province of the state attorneys general and the F.C.C. to sue fax broadcasters for technical violations." *Klein v. Vision Lab Telecomms., Inc.*, 399 F.Supp.2d 528, 540 (S.D.N.Y. 2005); *see* 47 U.S.C. § 227(f)(1), (7); 47 U.S.C. § 503(b)(1), (5). It is not the province of the court to add private rights of action not clearly authorized by Congress. *See Alexander v. Sandoval*, 532 U.S. 275, 286-87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (stating "private rights of action to enforce federal law must be created by Congress" and in the absence of statutory intent to create a private right and remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute").

22.    "Nothing in the legislative history indicates an intent on the part of Congress to turn each annoyed fax recipient into an individual F.C.C. enforcer." *Klein*, 399 F.Supp.2d at 540. "Allowing separate recovery for each and every technical violation alleged would create

a windfall for plaintiffs clearly not in the contemplation of Congress." *Id.* Because Congress did not expressly create a private right of action under § 227(d) and because allowing recovery under said provision was not contemplated by Congress and would create a windfall for Plaintiff, Plaintiff's claims under 47 U.S.C. § 227(d) should be dismissed.

**B.      There is No Evidence that Each Individual Defendant Violated the FDCPA.**

      1.      <u>Plaintiff has Failed to Prove that he owed a Debt Covered by the FDCPA.</u>

23.     The FDCPA defines a "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (2006) [emphasis added]. In *First Gibraltar Bank, FSB v. Smith,* the Fifth Circuit affirmed the District Court s dismissal of Defendant Oddo s counterclaim, under the FDCPA, for failure to state a claim for relief. 62 F.3d 133 (5th Cir. 1995). The District Court recognized that the obligation which First Gibraltar was attempting to collect from Oddo resulted from a transaction that was commercial, not for personal or household purposes. 62 F.3d at 136. Thus, it did not constitute a debt as defined by the federal statute. *Id.* Therefore, the District Court, the Northern District of Texas, was correct in dismissing Oddo s counterclaim under the FDCPA. *Id.*

24.     Plaintiff alleges, in his Second Amended Complaint, that the Defendants were attempting to collect "an alleged debt that was incurred for personal, family, or household purposes" and that the debt "was not incurred for any business or commercial purpose, nor did Defendant CMI or its agents at any time allege this was a commercial debt that they were

attempting to collect." Def's App. at 8-9, ¶ 34. Fortunately for Defendants, the burden of proof remains on Plaintiff to prove his case. Thus, Plaintiff must produce evidence that establishes that his debt was actually incurred for personal, family, or household purposes. Unfortunately for Plaintiff, he has not. There is no evidence supporting Plaintiff's allegation that the debt was for such purposes. Absent this evidence, Plaintiff's FDCPA claim should be dismissed.

2.   There is No Evidence that Each Defendant violated 15 U.S.C. § 1692c.

25.   Plaintiff alleges that all of the Defendants violated § 1692c(a) by calling Plaintiff on his cellular telephone after it was communicated that such calls to the phone were inconvenient. *See* Def's App. at 17, ¶ 58. Plaintiff also alleges that Defendants violated § 1692c(c) by continuing to call Plaintiff after Plaintiff refused to pay the debt. *See id.* Despite these allegations, Plaintiff's first claim is improper and he has failed to provide evidence in support of his second claim.

26.   Section 1692c(a) prohibits a debt collector from communicating with a consumer (1) "at any unusual *time or place* or a *time or place* known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1) [emphasis added]. This section of the FDCPA addresses the time at which a consumer is called and the physical location of that call, not the particular number dialed or which telephone is contacted. Plaintiff is attempting to misconstrue the plain language of the statute by transforming what could otherwise be a TCPA claim into an FDCPA violation. This particular statute does not relate to Plaintiff's claim and should be dismissed.

27.     Plaintiff's second cause of action under this section is based on subpart (c), which

addresses when a debt collector must cease communication with a consumer. Section

1692c(c) states:

> "If a consumer notifies a debt collector *in writing* that the consumer
> refuses to pay a debt or that the consumer wishes the debt collector
> to cease further communication with the consumer, the debt
> collector shall not communicate further with the consumer with
> respect to such debt..."

Plaintiff has produced no evidence that he notified Defendants of his refusal to pay the

debt *in writing* or that he notified Defendants of his wish that they stop calling *in*

*writing*. Without such evidence, Plaintiff cannot prove his claim that each Defendant

violated this section of the FDCPA. Therefore, it should be dismissed.

    3.     <u>There is No Evidence that Defendants Harassed or Abused Plaintiff.</u>

28.     Plaintiff alleges that the calls made to him were "repeated, malicious, willful, and

harassing in nature" in violation of § 1692d(5) and that Defendants misrepresented

themselves when they called in violation of § 1692d(6). *See* <u>Def's App.</u> at 12 & 17, ¶¶ 43

& 59. These provisions of the FDCPA prohibit a debt collector from "causing a telephone

to ring or engaging any person in telephone conversation repeatedly or continuously with

intent to annoy, abuse, or harass any person at the called number" and from placing

"telephone calls without meaningful disclosure of the caller's identity.' *See* 15 U.S.C. §§

1692d(5) & (6).   Plaintiff has not produced any evidence supporting these claims. There

is no evidence that each of the individual Defendants made repeated or continuous calls

with the intent to annoy, abuse or harass Plaintiff. There is no evidence that if and when

each individual Defendant   called Plaintiff, that they failed to properly identify

themselves. Based on this complete lack of evidence, Plaintiff's claims under these provisions should be dismissed.

4.       There is No Evidence of False or Misleading Representations.

29.     Plaintiff alleges that each individual Defendant made a number of false and misleading representations in violation of § 1692e. These allegations include misrepresenting the amount of the debt in violation of § 1692e(2)(a), misstating the true identity of the individual initiating the call in violation of § 1692e(11), and threatening to take action that cannot legally be taken in violation of § 1692e(5). *See* Def's App. at 8-23. But, as explained above, Plaintiff has provided no evidence supporting his allegations. During his deposition, Plaintiff admitted, "I don't know anything about any individual's specific roles at this point...," (App. at 25 (Depo 181:25-182:1)). Plaintiff further explains,  "I don't know what any of the people did..." (App. at 26 (Depo 189:16-17)), "I have not had a definitive account of what each and every person did," (App. at 26 (Depo 191:2-9)), and when asked if he could specifically explain what each person did wrong, Plaintiff answered, "Right now the only thing I can tell you is that I believe they violated the FDCPA and that they called me." App. at 27 (Depo 197:24 - 198:6). Unfortunately, Plaintiff's belief is not evidence of FDCPA violations. Based on the complete lack of evidence, Plaintiff's claims of false and misleading representations under § 1692e should be dismissed.

5.       There is No Evidence as to Who, if anyone, Violated 15 U.S.C. § 1692g.

30.     Plaintiff alleges that each Defendant violated the FDCPA by not providing validation of the debt and by not ceasing collection efforts after receiving a dispute, both pursuant to 15 U.S.C. § 1692g. *See* Def's App. at 9 & 16, ¶¶ 36 & 57. But Plaintiff fails to provide

any evidence of which Defendant or Defendants may have done this. As already explained, Plaintiff admits that he does not know what any of the people did, but believes that each person violated the FDCPA. This is not enough to allow Plaintiff's claims to survive. Unless Plaintiff provides such evidence, his claims under 15 U.S.C. § 1692g should be dismissed.

**C.      There is No Evidence that Each Defendant Violated the Texas Finance Code.**

31.     Plaintiff alleges that each Defendant made numerous false and misleading representations regarding, amongst other things, the amount of the debt, the dispute process, and whether CMI received Plaintiff's letter and that such violated the Texas Finance Code § 392.304. *See* Def's App. at 10, ¶ 38. Furthermore, Plaintiff claims that each Defendant violated the Texas Finance Code, section 392.202, by failing to obtain and forward validation of the debt after Plaintiff allegedly disputed it. *See id.* at 10-16. Finally, Plaintiff alleges that these actions were willful and knowing violations of the Finance Code. *See id.* at 22, ¶ 85.

32.     As explained repeated times above, Plaintiff has failed to proffer any evidence supporting his claims that each individual Defendant committed these allegedly knowing and willful violations of the Texas Finance Code. Plaintiff has provided the opposite. He admits that he does not know what each individual did or what their roles were. He is simply relying on his belief that each Defendant violated the law. This is insufficient to rescue his claims from summary judgment. Absent sufficient evidence, Plaintiff's claims under the Texas Finance Code should be dismissed.

**D.      Plaintiff's FCRA Claim Should be Dismissed.**

33.    While it is unclear from Plaintiff's Second Amended Petition whether he is, in fact, making a claim under the Fair Credit Reporting Act, he does mention that "[t]he conduct of the defendants in this affair violated...15 U.S.C. 1681(s-2)," which is the FCRA. *See* Def's App. at 19, ¶ 76. Thus, Defendants will address the possibility of such a claim.

34.    Section 1681s-2, of the FCRA, explains the responsibilities of furnishers of information to consumer reporting agencies. *See* 15 U.S.C. § 1681s-2. Subsection (a) is entitled "Duty of Furnishers of Information to Provide Accurate Information." *See id.* at § 1681s-2(a). It describes such prohibitions as reporting information with actual knowledge of errors, duties to correct and update information, duties to provide notice of disputes, and requirements for reporting negative information. *See generally* 15 U.S.C. § 1681s-2(a). Since it is unclear what provision Plaintiff is alleging Plaintiff violated, it is important to note that the FCRA does not provide a private right of action for subsection (a) of § 1681s-2.

35.    In *Peart v. Shippie*, the Eleventh Circuit Court addressed whether a plaintiff could bring a claim under 15 U.S.C. § 1681s-2(a).   08-17270 (August 11, 2009). The Court acknowledged that "the FCRA prohibits furnishers of credit information from providing false information" under § 1681s-2(a), "[h]owever," the Court noted, "the statute explicitly bars private suits for violations of this provision." *See id.* Subsection (c) of § 1681s-2, entitled "Limitation on Liability," explicitly rejects the application of the civil liability portions of the statute to violations of subsection (a). *See id.* More specifically, § 1681s-2(c) states that "sections 1681n and 1681o of this title do not apply to any violation of (1) subsection (a) of this section, including any regulations issued thereunder." Sections 1681n and 1681o impose civil liability for willful and negligent

noncompliance, respectively. Therefore, based on the plain language of the FCRA, any claims for damages under subsection (a) of § 1681s-2 should be dismissed because of a lack of a private right of action.

36.     Should Plaintiff attempt to clarify that his FCRA claim is brought under subsection (b) of § 1681s-2 for a failure to investigate the accuracy or the debt, the Court should again look at the *Peart* decision and note one important condition that Plaintiff must satisfy before succeeding on his claim. The Eleventh Circuit accepted the fact that "[t]he FCRA also requires furnishers of credit information to investigate the accuracy of said information upon receiving notice of a dispute," citing to § 1681s-2(b). *See* 08-17270 (11th Cir. 2009). Unlike subsection (a), subsection (b) "can be enforced through a private right of action, but only if the furnisher received notice of the consumer's dispute *from a consumer reporting agency*." *See id.* (citing 15 U.S.C. § 1681s-2(b)(1)) [emphasis added]. Based on this requirement, the Court dismissed Peart's claim under subsection (b) because he failed to even allege "that Wells Fargo [the furnisher of the information] failed to conduct an investigation into Peart's credit history *after being notified of a dispute by a credit reporting agency*." *See id.* [emphasis added].

37.     Subsection (b) of § 1681s-2 begins by stating the condition that it takes effect only "[a]fter receiving notice pursuant to § 1681i of a dispute with regard to the completeness or accuracy of any information..." *See* 15 U.S.C. § 1681s-2(b)(1). Section 1681i provides procedures in case of the disputed accuracy of credit information, with subsection (a)(2) pertaining to notice of disputes given to the furnisher of the information. *See* 15 U.S.C. § 1681i(a)(2). This section states that the consumer reporting agency will send notice to the

furnisher of the information in dispute within five days of the dispute. *See id.* It is this notice that triggers subsection (b) of § 1681s-2.

38.     Pursuant to this requirement, Plaintiff must supply evidence that each Defendant was given proper notice of his dispute from a consumer reporting agency in order for him to invoke subsection (b) of § 1681s-2. This he has not done. Based on this failure, Plaintiff's claims under the FCRA should be dismissed.

**E.      There is No Evidence that Each Defendant Violated the Texas Deceptive Trade Practices Act.**

39.     Plaintiff alleges that each individual Defendant violated the DTPA through the tie-in provision in the Texas Finance Code, making violations of the latter a violation of the former. *See* <u>Def's App.</u> at 19, ¶ 72. Plaintiff also claims that each Defendant has violated the DTPA by violating the TCPA, FDCPA, and the FCRA. *See id.* at 19, ¶ 76. Plaintiff claims that he is entitled to treble damages under the DTPA because each of the Defendants acted willfully and knowingly in violating the other respective statutes and thus constitutes knowing and willful violations of the DTPA. *See id.* at 23, ¶ 88.

40.     Plaintiff has failed to support his claims under the TCPA, FDCPA, and the Texas Finance Code with sufficient, credible summary judgment evidence. Since Plaintiff has not proven his other claims, he cannot succeed under the DTPA. Therefore, Plaintiff's failure to provide summary judgment evidence supporting his other causes of action results in the failure of his DTPA claim, which should be dismissed.

**F.      Plaintiff has Offered No Evidence that He has Suffered Any Damages as a Result of Each Defendants' Actions.**

41.     The Texas Finance Code, under the Texas Debt Collection Act, requires a plaintiff to prove that he has suffered "actual damages sustained as a result of a violation of this

chapter." *See* Tex. Fin. Code § 392.403(a)(2); *see Elston v. Resolution Servs.*, 950 S.W.2d 180, 185 (Tex.App.–Austin 1997, no writ) ("Because Elston failed to establish conclusively in his response to the motion for summary judgment that he suffered actual damages related to the alleged violations, he failed to carry his burden of proof in the summary-judgment proceeding"). In addition, "[a] consumer must, in order to prevail on a DTPA claim, also establish that each defendant violated a specific provision of the Act, and that the violation was a producing cause of the claimant's injury." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (citing Tex.Bus. & Com.Code § 17.50(a)). Therefore, in order for Plaintiff to succeed under his Texas Finance Code and DTPA claims, he must prove that he suffered some actual injury and that the injury was caused or was "a result of" the specific violations. This he has failed to do.

42.   Plaintiff has not proffered any evidence that he suffered any actual injuries as a result of each Defendants' actions. Furthermore, he has not demonstrated that any such injury was proximately caused by each individual violation of the Acts. Based on this complete failure, Plaintiff's claims under the Texas Finance Code and DTPA should be dismissed.

**V.**

**CONCLUSION**

43.   Plaintiff has made allegations against a number of individuals, claiming violations of a variety of federal and state statutes. But, Plaintiff has done so haphazardly. He has admitted as much when he stated that he did not know what any of these individuals had done. Based on his own admissions and his complete lack of evidence, Plaintiff's claims against these individuals should be dismissed.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court Dismiss Plaintiff's claims pursuant to Defendant's Motion for Summary Judgment, and for all other relief to which Defendants may show themselves justly entitled.

Respectfully submitted,

\s\Robbie Malone
ROBBIE MALONE
State Bar No. 12876450
**ROBBIE MALONE, PLLC**
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
(214) 346-2625
(214) 346-2631 FAX
E-mail: rmalone@rmalonelaw.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded via electronic filing, return receipt requested on this 20th day of January, 2010 to:

Craig Cunningham, Plaintiff Pro-se
P.O. Box 820022
Dallas, Texas  75231