UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

)   Craig Cunningham
)   Plaintiff, Pro-se
)
)        **v.**                                    **CIVIL ACTION NO.**  3-09-CV-1497-G
)
)   Credit Management L.P.
)   James Hawkins, Steve Brockett
)   Nelson Wilson, Thomas Stockton,
)   Rebecca Swope, Nevandone Vanhnarath,
)   Clarissa Murphy, Eileen Rodriguez, Alfredo Cruz,
)    Kendrya Kapp, Anna Garcia, Nancy Mena, Rebecca Greenlee,
)   Anthony Peck, Adrienne scott, Juan Lopez, Jimmy Saldona,
)   Tony Richard, Bobbin Joseph, Elsie Barnes, Melissa Mena,
)    Brandi Jones, Tarryance Blanchard, Susana Camacho, Cureese Payton,
)    Michael Leatherwood,
)   Travelers Casualty and Surety Company of America
)   Defendants.

**Plaintiff's Sur Reply to Plaintiff's Motion for Summary Judgment of All claims**

**Table of Contents:**

**Introduction**

1. To the Honorable US District Court Magistrate:

2. Now Comes the Plaintiffs' Sur-reply for summary judgment of all claims against the

    Defendants.

3. Although the Defendants counsel has alleged that the Plaintiff's case was in bad faith and

    for the purpose of harassment and that the Plaintiff sued individuals without knowing

    what they did, recent discovery responses will show that these assertions are simply

    preposterous.

**4. FDCPA violations**

5. Thomas Stockton violated the FDCPA as he was supervising the day to day operations of the company when these violations occurred, thus Thomas Stockton was functioning as a debt collector while he instructed the agents and employees of Defendant CMI on debt collection. Additionally, Thomas Stockton is the manager of both Credit Management GP, LLC the General Partner for Credit Management, and Credit Management Limited Partner, LLC, both the limited and general partners for Credit Management LP.[1]

6. To recap, Thomas Stockton is the CEO for Credit Management LP, chairman of the board for Credit management LP, Manager of the General partner entity, and manager of the limited partner entity, and based on his own statements is active in the day to day operations of Credit Management LP. Thomas Stockton's efforts were instrumental in the functioning of Credit Management LP and thus makes him a debt collector under the FDCPA as well as having respondant superior liability for the actions of the agents of Credit Management LP and the limited and General partner entities.

7. Each and every other individual employee on tape violated the FDCPA 15 USC 1692(g) by not ceasing collection attempts after the Plaintiff's dispute and engaged in a false or misleading representation by at least stating that the Plaintiff owed a debt when he really did not.

8. Specifically, Nicolas Ycaza, Bobbin Joseph, Elsie Barnes, Lidia Deleon, Alicia Garcia, Melissa Mena, Rebecca Greenlee, Nakia Wilson, Angel Graciano, Angel Lopez, Tarryance Blanchard, Trevino, Melody Waters, Jimmy Saldana, Sandra Contreras, Cureese Payton, Maria Nunez, Michael Leatherwood, Oscar Gomez, Rebecca Swope, Anna Garcia, Nevandone Vanhnarath, Clarissa Murphy, Osvaldo Torres, Eileen Rodriguez, Kyle Haynes, Alfredo Cruz, Michael Synnot, Tony Richard, Alfredo Cruz,

---

[1] See Plaintiff's App 22 and 23

Damion Hudlun, and Anthony Peck all attempted to collect a debt from the Plaintiff

improperly through the telephone or via letters to the Plaintiff.[2]

**9.   Violations of 15 USC 1692(e)(2)**

10. Defendant CMI and its agents violated the FDCPA by first and foremost attempting to

collect a debt from the Plaintiff for which they are unable to prove exists, which is a false

or misleading representation in violation of 15 USC 1692(e)(2). Furthermore, the

existence of any debt is specifically disclaimed by the purported original creditor in this

case. When asked directly by the Plaintiff if he owes any money to Time Warner, an

agent of Time Warner replied in the negative.

11. It is therefore impossible for the Defendants to substantiate a debt that the purported

original creditor specifically disclaims exists. Additionally, the Defendants have yet to

provide any evidence that the alleged debt ever existed. If no debt existed, then each and

every call, letter, or communication with the Plaintiff attempting to collect this imaginary

debt is a false and misleading representation and misrepresents the amount of a debt.

12. By stating in writing and in multiple subsequent calls through agents to the Plaintiff that

the Plaintiff owed a Debt that the Defendants are unable to substantiate, Defendant CMI

and each and every agent that spoke with the Plaintiff made a false or misleading

representation likely to deceive an unsophisticated consumer and misrepresented the

amount of a debt.[4]

13. To date, the Defendants have been unable or unwilling to provide any evidence that a

debt even exists or even any involvement of the purported original creditor, thus their

claims of the Plaintiff owing a debt are false and misleading. Federal courts have held

---

[2] See Plaintiff's App 1-21, deposition queston 57
[4] App 1-21

that a debt collector's inability to substantiate that a debt is owed violates the FDCPA:

**Maxwell v. Fairbanks Capitol,** Chapter 13 Case No. 00-14283-JNF; Adv.P No. 00-1568, 281 B.R. 101 (Bankr. D. Mass. 2002), July 16, 2002

14. In total, as illustrated below, you have 11 violations of 15 USC 1692(e)(2) by Defendant CMI and Defendant Steve for letters sent and each individual that spoke to the Plaintiff violated this section as well.

15. The Plaintiff has identified  31 individuals listed above that violated this section of the FDCPA.[5] Defendants Steve Brockett and James Hawkins are also liable for the actions of their call center subordinates who violated the FDCPA in conversations with the Plaintiff.

**16. Violations of 15 USC 1692(g)(b)**

17. Defendant CMI violated the FDCPA by failing to cease collection efforts to the Plaintiff after the Plaintiff's verbal/written disputes in violation of 15 USC 1692(g)(b). The Plaintiff disputed the alleged debt verbally on September 2nd, 2008 again on September 8th and in writing via certified mail **7007 3020 0001 4787 8446,** and the Plaintiff rejected the Defendants purported validation in a letter received by the Defendants on November 4th, 2008 via certified mail **7008 1140 0003 3204 5521** in addition to multiple subsequent verbal disputes by the plaintiff regarding the validity of the purported debt.  Despite the Plaintiff's dispute and without providing validation of the purported debt, the Defendants continue to mail letters and place telephone calls to the Plaintiff seeking payment.

18. Additionally, the Plaintiff received a total of 31 automated calls on: 9/2/2008, 9/8/2008, 9/9/2008, 9/29/2008, 10/6/2008, 10/21/2008, 10/23/2008, 10/24/2008, 10/30/2008, 11/03/2008, 11/06/2008, 11/10/2008, 11/14/2008, 11/18/2008, 12/11/2008, 12/13/2008,

[5] App 1-21

12/15/2008, 12/19/2008, 1/2/2009, 1/10/2009, 1/28/2009, 2/17/2009, 2/26/2009,

3/2/2009, 3/7/2009, 3/13/2009, 3/14/2009, 3/25/2009, 4/2/2009, 4/4/2009.

19.  This s a grand total of 31 automated calls to the Plaintiff from Defendant CMI by their

own statements in the Plaintiff's written deposition. These calls violated the TCPA and

15 USC 1692(e)(5)

20. Each collection attempt by Defendant CMI and Steve Brockett who sent the letters is a

violation of 15 USC 1692(g)(b). The Plaintiff has identified Marivel Trevino and Melody

Waters as the culprits who actually mailed the letters on behalf of Steve Brockett and

CMI based on the deposition responses by CMI.

**21. Violations of 15 USC 1692(g)**

22. The FDCPA requires a debt collector to cease collection efforts until validation is

provided when a consumer disputes a debt. The Defendants never obtained and

forwarded validation of the purported debt to the Plaintiff in response to the Plaintiff's

dispute or in response to the Plaintiff's discovery requests.

23. The FDCPA requires a debt collector cease collection efforts until validation is provided

15 USC 1692(g).

24. Each and every call and letter from Defendant CMI after the initial letter and call on

September 2nd, 2008 violated the FDCPA, 15 USC 1692(g)(b) as they are not ceasing

collection activity after the Plaintiff's dispute and have not provided validation to the

Plaintiff. In total you have 41 violations of this section of 15 USC 1692(g)(b) by

Defendant CMI and additionally, Defendant Steve Brockett violated this section for a

total of 41 times as he was the vice president of operations during this time and his

signature is at the bottom of each and every letter to the Plaintiff, thus he is a responsible party for the calls and letters to the Plaintiff.

25. Defendant CMI violated the FDCPA by failing to provide validation to the Plaintiff after the Plaintiff's dispute. The Defendant CMI and several other agents misrepresented dunning letters as validation and itemized bills/statements, but these repeated collection efforts did not contain any documents from the purported original creditor, and did not consist of an accounting of what the debt was for or how the amount claimed owed was reached. The Defendants have quite simply been unable or unwilling to produce one shred of evidence to substantiate that Time Warner is even involved in this issue.

**26. Violations of 15 USC 1692(c)(a)(1)**

27. The FDCPA prohibits communications with a consumer when or wherever the consumer deems it inconvenient. The statute states: *Without the prior consent of the consumer given directly to the debt collector…a debt collector may not communicate with a consumer in connection with the collection of any debt at …a time or place known to be inconvenient to the consumer.*

28. On September 8, 2008 in a conversation with Defendant Elsie Barnes, the Plaintiff explicit stated that calls to his cell phone 469-463-0827 are inconvenient and additionally stated that he did not give authorization to anyone to call his cell phone.

29. Despite this objection, 29 calls continued to come from Defendant CMI with their full knowledge that the calls were inconvenient and harassing. Each and every subsequent phone call to the Plaintiff's cell phone was a violation of the FDCPA 15 USC 1692(c)(a)(1) for a total of 29 violations of the FDCPA. Each and every phone call in

violation of the TCPA also is another violation of the FDCPA 15 USC 1681(c)(a)(1) as the Defendants were put on notice on September 8, 2008 and yet the calls continued.

**30. Violations of 15 USC 1692(e)(5)**

31. Violating state law or any other law is also a violation of the FDCPA 15 USC 1692(e)(5) according to the 5th Circuit of appeals which stated: *As the Louisiana courts have found Alco's actions in filing suit against Poirier constituted the unauthorized practice of law, there is no longer any dispute that Alco violated §1692e(5) of the FDCPA when it took "action that cannot legally be taken" against Poirier. As such, Poirier has a valid FDCPA action. Alco and Allen are liable to Poirier for civil damages under § 1692k(a).* **Poirier v. Alco Collections Inc** 107 F.3d 347,( 5th Cir 1997).

32. Defendant CMI violated the FDCPA by placing calls containing automated messages to the Plaintiff's cell phone in violation of the TCPA, which is taking action that legally cannot be taken in violation of 15 USC 1692(e)(5).

33. Defendant CMI violated the FDCPA by way of violating the TCPA by placing calls containing pre-recorded messages to the Plaintiff's cell phone. By taking action the Defendants legally could not, the Defendants violated the FDCPA.[11]

**34. Violations by each individual defendant and violations of 15 USC 1692(e)**

35. Defendant CMI and  Defendant Rebecca Greenlee violated the FDCPA by alleging through an agent that information regarding the Plaintiff would be reported to a consumer reporting agency, as defined by the Fair Credit Reporting Act on October 1, 2008 when in fact no information regarding the Plaintiff was allegedly reported until January 2009.[12]

---

[12] App 1-21

This is an attempt to create a false sense of urgency by the Defendants in violation of 15 USC 1692(e).

36. Both Michael Synnott (on 2/26/09) and Michael Leatherwood (on 12/13/08) spoke to the Plaintiff and attempted to collect a debt, thus they violated 15 USC 1692(e), 15 USC 1692(e)(5), 15 USC 1692(g) and 47 USC 227.

37. Both Rebecca swope (on 1/2/2009) and Rebecca Greenlee (on 9/29/08 and 11/6/08) spoke to the Plaintiff  and attempted to collect a debt from the Plaintiff in violation of the FDCPA 15 USC 1692(e), 15 USC 162(e)(5), and 15 USC 1692(g).

38. Each contact and communication from each individual defendant violated at a minimum: FDCPA 15 USC 1692(e), 15 USC 162(e)(5), and 15 USC 1692(g).

39. Marivel Trevino (on 9/23/08), Cureese Payton (on 11/19/08), Alfredo Cruz (on 2/19/09), and Melody Waters on 11/11/08 both violated the FDCPA by writing the Plaintiff letters in violation of 15 USC 1692(e), 15 USC 1692(g), and 15 USC 1692(e)(5) as the letters contained false assertions of a debt being owed, continued to collect after the Plaintiff's objections, and constitute illegal actions taken in an attempt to collect a debt.

40. **Violations of 47 USC 227(b)(1)(iii)**

41. The TCPA prohibits automated phone calls to cellular telephones, pursuant to 47 USC 227 (b)(1)(iii) without the express prior consent of the individual being called: *It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States… to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a paging service, cellular telephone service.*

**42.** The Plaintiff notes that the TCPA prohibits both automated calls and calls with pre-recorded messages/artificial voices in the above chapter, so an automated call violates once, and an automated call with a pre-recorded message violates twice. Not every call contained both pre-recorded messages, but a total of 15 of the 31 calls did contain both pre-recorded messages and were automated.[40]

**43.** The Defendants violated the TCPA 31 separate times by placing automated calls to the Plaintiff and an additional 15 times by placing calls with pre-recorded/artificial voices for a total of 46 seperate violations of the TCPA.

**44. Violations of 47 USC 227(d)(3)**

**45.** For the 15 calls which contained both pre-recorded messages and were automated, the messages were not compliant with 47 USC 227(d)(3) as they did not identify at the beginning of the message the identity of the business and the individual placing the call, and did not include the address of the individual and entity placing the call at the end of the call. These are 4 separate violations of the TCPA for each and every call to the Plaintiff that contained a pre-recorded message/artificial voice for a total of 75 willful violations of the TCPA.[41]

**46.** In total, Defendant CMI violated the TCPA a total of 91 times, which illustrates that the actions by the Defendants were willful and knowing acts, as well as the admissions by the Defendants to using an automated telephone dialing system and pre-recorded message to call the Plaintiff. This entitles the Plaintiff to enhanced treble damages under the statute of $1500 per violation as opposed to the minimum of $500 per violation.

**Conclusion**

---

[40] App 1-21
[41] App 1-21

**47.** As illustrated above, the Defendants have violated the FDCPA and TCPA willfully and repeatedly. By not providing validation in response to the Plaintiff's dispute on September 2nd, 2008, making false and misleading representations, and by continuing to make collection attempts despite not providing validation, the Defendants violated the FDCPA. The Defendants violated the TCPA by placing automated phone calls not related to an emergency purpose to the Plaintiff's cell phone without express consent and over the Plaintiff's objections.

/s/Craig Cunningham

Plaintiff, Pro-se

PO Box 180491

Dallas, Tx 75218

206-312-8648
July 28, 2010